UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT ENGLAND,<br><br>    Plaintiff,<br><br>  v.<br><br>ROBERT HOREL; et al.,<br><br>    Defendants.<br>_____ / | No. C 10-153 SI (pr)<br><br>**ORDER OF SERVICE** |

## INTRODUCTION

Robert England, an inmate at Pelican Bay State Prison, filed a <u>pro se</u> civil rights action under 42 U.S.C. § 1983, the Americans with Disabilities Act of 1990, 42 U.S.C.§ 12101 <u>et seq.</u> ("ADA"), and Rehabilitation Act of 1973, 29 U.S.C. § 794 <u>et seq.</u> His complaint is now before the court for review under 28 U.S.C. § 1915A.

## BACKGROUND

Robert England alleges the following in his complaint:

England had his right arm amputated in 1986 due to injuries suffered in a motorcycle accident two years earlier. Since then he "has had to take pain medication for nerve damage and extreme pain." Complaint, p. 7. In 2000, he suffered injuries to the left side of his body and had to have surgery on his left shoulder, left elbow and left wrist. He summarizes his medical problems thusly: he "is missing his right dominant hand and suffers from extreme pain(s), and is suffering from nerve damage on both sides of his body. As well as muscular atrophy and/or dystrophy." Complaint, p. 1.

1  He receives medication for his conditions, including daily amitriptyline for nerve pain and
2  naproxen for muscle pain. Sometimes the medications are not adequate.

3  Until 2002, he had cellmates who would assist him with daily living activities, such as
4  washing clothes, cleaning the cell, grooming, and writing. Since 2002, he has been single-celled
5  and prison officials have refused to move another willing and compatible cellmate in with him.
6  As a result he has had to do all his daily living chores without help. Doing various life activities
7  causes great pain for him due to the "above-mentioned disabilities on both side of his body." Id.
8  at 10. For example, he has difficulties writing, cleaning his cell, washing his clothes, trimming
9  his nails, cutting his hair, making his bed, and reaching into his storage space.

10  England submitted a reasonable modification or accommodation request form ("ADA
11  request form") on September 26, 2006. The request was denied without an adequate
12  investigation having been performed.

13  England submitted a second ADA request form on July 27, 2007. There were difficulties
14  in having this form processed, but eventually he received some but not all of the
15  accommodations he requested. Specifically, he received extra socks and underwear, apparently
16  to deal with his reported problems with washing his clothes that he couldn't send out for the
17  laundry service. The remainder of the request was denied without an adequate investigation
18  having been performed.

19  He filed several inmate appeals about the responses to his ADA request forms, and
20  received unsatisfactory responses.

21  "During these times," England submitted medical requests to see a doctor for stronger
22  pain medications. Id. at 22. Defendants Sayre and Risenhoover continued to refuse to provide
23  stronger pain medications for him. England also requested physical therapy. Sayre and
24  Risenhoover only allowed very limited physical therapy for him. Id. at 25. Both Sayre and
25  Risenhoover told him that better care was available if he got out of the SHU so he should try to
26  do that by debriefing.

27  Defendant Wilber delayed and interfered with England's efforts to present and pursue his
28  ADA request forms and his inmate appeals.

2

**DISCUSSION**

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. See id. at 1915A(b)(1),(2). Pro se pleadings must be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

A.    ADA and Rehabilitation Act Claim

Title II of the Americans with Disabilities Act of 1990, 42 U.S.C.§ 12101 et seq. (ADA), provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II of the ADA, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).[1] Although § 12132 does not expressly provide for reasonable accommodations, the implementing regulations provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public

---

[1] The elements of a claim under the Rehabilitation Act are that: (1) the plaintiff is a handicapped person under the Act; (2) he is otherwise qualified; (3) the relevant program receives federal financial assistance; and (4) the defendants impermissibly discriminated against him on the basis of the handicap See Bonner v. Lewis, 857 F.2d 559, 562-63 (9th Cir. 1988); cf. Olmstead v. Zimring, 527 U.S. 581, 589-90 (1999) (noting similarities between Rehabilitation Act and Title II of ADA).

3

entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). The duty to provide "reasonable accommodations" or "reasonable modifications" for disabled people under Title II of the ADA arises only when a policy, practice or procedure discriminates on the basis of disability. Weinreich v. Los Angeles County MTA, 114 F.3d 976, 979 (9th Cir. 1997).

Liberally construed, the complaint states a claim for a violation of the ADA and Rehabilitation Act based on prison officials' refusal to provide reasonable accommodations for England as a disabled person. Although a claim is stated, not all the defendants have liability. The listed defendants allegedly each played a role in denying England's requests and inmate appeals after his requests were denied. The defendants were sued in their individual and official capacities. None of the defendants has liability in his or her individual capacity for the alleged ADA violation. See Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002), cert. denied, 537 U.S. 1104 (2003). The ADA claim against the defendants in their individual capacities is dismissed. Here, the "public entity" that allegedly discriminated against England would have been Pelican Bay State Prison or the CDCR or both. State correctional facilities are "public entities" within the meaning of the ADA. See 42 U.S.C. § 12131(1)(A) & (B); Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 210 (1998). A suit against a person in his official capacity is considered to be a suit against the entity of which the officer is an agent. See Kentucky v. Graham, 473 U.S. 159, 165 (1985). For example, naming the warden in his official capacity, and naming the director of the California Department of Corrections and Rehabilitation is considered a suit against those two entities. The listed defendants include those two people – i.e., warden Jaquez and CDCR director Mathew Cate – and service of process will be ordered on them in their official capacity. There does not appear to be a reason to have the 20 other defendants served with process because there appears no need to have 22 stand-ins for the prison and CDCR when these two will suffice.

/ / /

4

## B. Deliberate Indifference To Medical Needs

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

When an inmate alleges that his medical care has been constitutionally inadequate, he must allege two things to state a claim: (1) a serious medical need and (2) deliberate indifference to that need by prison officials. See McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Liberally construed, the complaint states a cognizable § 1983 claim against defendants Sayre and Risenhoover for allegedly denying England's requests for increased or different pain medications and for failing to grant him more physical therapy. Liberally construed, the complaint also states a cognizable state law negligence claim against these two defendants for the same acts and omissions. Neither a §1983 claim nor a negligence claim is stated with regard to the medications and physical therapy against other defendants, who handled the various administrative appeals and grievances, but were not alleged to have been England's health care providers.

## C. Inmate Appeals

England alleges that defendant Wilber provided unsatisfactory responses to his inmate grievances and appeals and would not process some of them as England wished. Also, as the appeals coordinator, defendant Wilber allegedly improperly screened out some inmate appeals. The failure to grant an inmate's appeal in the prison administrative appeal system does not amount to a due process violation. There is no federal constitutional right to a prison administrative appeal or grievance system for California inmates. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996). The denial of an inmate appeal is not so severe a change in condition as to implicate the Due Process Clause itself and the State of California has not created a protected interest in an administrative appeal

5

system in its prison. California Code of Regulations, title 15 sections 1073 and 3084.1 grant prisoners a purely procedural right: the right to have a prison appeal. The regulations simply require the establishment of a procedural structure for reviewing prisoner complaints and set forth no substantive standards; instead, they provide for flexible appeal time limits, see Cal. Code Regs. tit. 15, § 3084.6, and, at most, that "no reprisal shall be taken against an inmate or parolee for filing an appeal," id. § 3084.1(d). A provision that merely provides procedural requirements, even if mandatory, cannot form the basis of a constitutionally cognizable liberty interest. See Smith v. Noonan, 992 F.2d 987, 989 (9th Cir. 1993); see also Antonelli, 81 F.3d at 1430 (prison grievance procedure is procedural right that does not give rise to protected liberty interest requiring procedural protections of Due Process Clause). England had no federal constitutional right to a properly functioning appeal system. An incorrect decision on an administrative appeal or failure to process the appeal in a particular way therefore did not amount to a violation of his right to due process. The claims concerning the handling of the administrative appeals are dismissed for failure to state a claim upon which relief may be granted.

## CONCLUSION

For the foregoing reasons,

1. The complaint states a claim for relief under the ADA and Rehabilitation Act against defendants Jaquez and Cate in their official capacity. The complaint states a claim for relief under 42 U.S.C. § 1983 against defendants Sayre and Risenhoover for deliberate indifference to serious medical needs and a state law negligence claim against them. All other defendants and claims are dismissed.

2. The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the amended complaint and a copy of all the documents in the case file upon the following four defendants:

6

         - Mathew Cate (Director of California Dept. of Corrections & Rehabilitation)
         - Francisco Jaquez (warden of PBSP)
         - Michael Sayre, M.D. (PBSP medical staff)
         - Sue Risenhoover (PBSP medical staff)

3. In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

    a. No later than **December 10, 2010**, defendants must file and serve a motion for summary judgment or other dispositive motion. If defendants are of the opinion that this case cannot be resolved by summary judgment, they must so inform the court prior to the date the motion is due.

    b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the court and served upon defendants no later than **January 14, 2011**. Plaintiff must bear in mind the following notice and warning regarding summary judgment as he prepares his opposition to any summary judgment motion:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. [¶] Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. (See Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998).)

Plaintiff also should take note that a defendant may file a motion to dismiss for failure to exhaust administrative remedies instead of, or in addition to, a motion for summary judgment. A motion to dismiss for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, result in the termination of the action. The plaintiff must "develop a record" and present it in his opposition to dispute any "factual record" presented by a defendant's motion to dismiss. Wyatt v. Terhune, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003).

   c. If defendants wish to file a reply brief, the reply brief must be filed and served no later than **January 28, 2011**.

  4. All communications by plaintiff with the court must be served on a defendant's counsel by mailing a true copy of the document to defendant's counsel. The court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, plaintiff may mail a true copy of the document directly to defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

  5. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

  6. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

  7. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to this court for consideration in this case.

IT IS SO ORDERED.

Dated: October 4, 2010

                _____
                SUSAN ILLSTON
                United States District Judge