UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT ENGLAND,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>HOREL, et al.,<br><br>　　　　Defendants.<br>　　　　　　　　　　　　　　　／ | No. C 10-0153 SI (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

### **INTRODUCTION**

This is a federal civil rights action. Defendants, employees of Pelican Bay State Prison ("PBSP"), move for summary judgment on grounds that there are no triable issues of fact and that they are entitled to summary judgment as a matter of law. For the reasons set forth below, defendants' motion is GRANTED. Judgment will be entered in favor of defendants as to all claims. Plaintiff shall take nothing by way of complaint.

# BACKGROUND

The following factual allegations are undisputed, unless specifically noted otherwise.[1] Plaintiff's claims arise from the facts that (1) in 1986, his right arm was amputated below the elbow following a motorcycle accident, and (2) in 2000, he suffered injuries to the left side of his body, which were treated with three surgeries. Owing to these traumas, plaintiff experiences daily pain. Until 2002, plaintiff had a cell-mate who assisted him with daily living activities. In 2002, plaintiff was transferred to a single-cell unit in the Secured Housing Unit of PBSP. From 2006 to 2008, plaintiff requested assistance with performing his daily activities. Defendants granted some requests, and denied others. (Compl. ¶¶ 22–31, 82–83). Plaintiff alleges that (1) by denying his requests for assistance, defendants violated his rights under the Americans With Disabilities Act ("ADA") and the Rehabilitation Act of 1973; (2) defendants provided constitutionally inadequate medical care under the Eighth Amendment; and (3) defendants committed negligence when they provided health care. Plaintiff seeks injunctive and declaratory relief and money damages.

# STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

---

[1] Plaintiff's claims, as well as his legal, factual and evidentiary assertions, come solely from his complaint. His opposition to defendants' MSJ consists entirely of one two-sentence paragraph in which he reaffirms that the allegations in his complaint are "true and correct." (Pl.'s Opp. to MSJ (Docket No. 24).)

2

issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323.

## DISCUSSION

### I. ADA and Rehabilitation Act Claims

Plaintiff claims that he experiences pain when, and has difficulty with, performing the following tasks: writing, laundry, dressing himself, keeping his cell clean, bathing, and grooming. He admits that he can perform these activities, yet with difficulty as he experiences pain in doing them. (Compl. ¶¶ 70, 73.)

Plaintiff submitted requests to defendants for assistance in performing these activities. The parties agree that some of these requests were granted, such as for assistance with laundry, clipping his nails, and flossing his teeth. As to laundry, the parties agree that the prison already does laundry for all prisoners. In response to his more specific complaint, that he has to wash clothing himself in his sink in order to have some clean clothing before his clean laundry is returned, the parties agree that defendants have provided extra clothing. As for the other two matters, plaintiff admits that he is now receiving help with clipping his nails and flossing his teeth. (Compl. ¶¶ 82–83). He maintains, however, that he is disabled within the meaning of the

3

ADA, and that he needs assistance in performing his daily activities. Defendants have informed plaintiff that he would be placed in the Disability Placement Program ("DPP"), even though defendants had concluded that he did not have a mobility disability. (MSJ at 6.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II of the ADA, a plaintiff must allege four elements: (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). Essentially the same showing is required to state a cause of action under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. *See Olmstead v. Zimring*, 527 U.S. 581, 589–91 (1999); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). As the parties have not indicated any relevant difference between the ADA and Rehabilitation Act analyses for Curry's claims, the claims will be addressed together, as they frequently are. *See Duvall*, 260 F.3d at 1135.[2]

Although Title II of the ADA does not expressly address the provision of reasonable accommodations, one of the implementing regulations does so, as follows: "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service,

---

[2] The ADA was amended by the ADA Amendments Act of 2008 ("ADAAA"), *see* Pub. L. No. 110-325, 122 Stat. 3553 (2008), which took effect in 2009, but the amendments are not retroactively applied. *See Becerril v. Pima County Assessor's Office*, 587 F.3d 1162 (9th Cir. 2009). The amendments sought to broaden protections narrowed by Supreme Court decisions. Plaintiff's allegations cover acts performed before the amendments took effect. The distinction is moot here, as plaintiff fails to show a triable issue of fact even under the more permissive ADAAA standard.

4

1  program, or activity." 28 C.F.R. § 35.130(b)(7).

### 1. Qualifying Disability

Under the ADA, an individual is defined as having a disability if the individual has: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(1).[3] "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A).

Defendants appear to deny that plaintiff has a qualifying disability. Based on their investigations, plaintiff does not have "trouble dressing, bathing, or feeding himself, and that he [is] able to write with his left hand." (Defs.' Mot. for Summ. J. ("MSJ") at 15.) Additionally, a cell inspection showed that plaintiff "was able to keep a neat, tidy cell and did not need assistance with his daily living activities." (*Id.* at 13.) Accordingly, defendants denied his requests for assistance with these activities because they were not medically necessary. (*Id.*)

Plaintiff disputes this. He has presented evidence that he experiences great pain and difficulty in writing, doing his laundry, dressing himself, keeping his cell clean, bathing, and grooming. For instance, he does not bathe on Fridays owing to the pain (Compl. ¶ 56), a "2-3 page letter takes a few days to complete," (*id.* ¶ 31), cleaning his cell takes 30–45 minutes and he cannot keep it clean for weeks at a time (*id.* ¶ 38–40), and he has to keep his head shaved

---

[3] Plaintiff has made no allegation, and certainly no showing, regarding the latter two factors. There is nothing in the record to show that plaintiff has a record of having an impairment within the meaning of the ADA; indeed, defendants' failure to make such a record is the gravamen of plaintiff's claims. There is also nothing in the record that plaintiff "meets the requirement of 'being regarded as having such an impairment,'" meaning anything to show that he "has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Again, plaintiff complains that defendants do not regard him as having a disability.

because he cannot lift the heavy electric clippers for long periods (*id.* ¶ 42–43).

Plaintiff's admissions defeat his attempt to show a triable issues of fact that he has a qualifying disability. Even assuming that all these activities are major life activities within the meaning of the ADA,[4] plaintiff admits he is able to perform every one and perform them with sufficient thoroughness, however slowed by pain. That he cannot perform them with the speed, frequency, and duration he would like does not show a triable issue of fact that he is substantially limited in performing them. *See Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 797–98 (9th Cir. 2001), clarified, 292 F.3d 1045 (9th Cir. 2002) (plaintiff's alleged inability to type and write for extended periods of time did not show substantial limitation of her ability to perform manual tasks). Put another way, a delay in being able to complete letters, taking 30–45 minutes to clean his cell, and having to keep a shaved head rather than lift heavy clippers for a long period — considering that he is still able to groom himself by keeping his head shaved — does not show that plaintiff is substantially limited in performing a major life activity. It is not enough to assert that the alleged disability has an effect on, or creates a difficulty in, the performance of these tasks. The alleged impairment must "substantially" limit his ability. On the facts as he alleges, he is still able to perform these activities, and with sufficient thoroughness. On such a record, plaintiff has not shown a triable issue of fact.

### 2. Otherwise Qualified to Participate

For purposes of this order only, the Court assumes, without deciding, that plaintiff meets this requirement.

---

[4] Grooming and bathing would certainly fall under "caring for oneself" under 42 U.S.C. § 12102(2)(A). Whether writing is a major life activity has not been settled. *See Thornton*, 261 F.3d at 798 n.5.

6

### 3. Denied Participation in Program

Plaintiff alleges that defendants have prevented him from receiving assistance with the following programs and services: writing, laundry, dressing himself, keeping his cell clean and orderly, cutting his hair and fingernails, brushing his teeth, and bathing/keeping himself clean. Plaintiff admits that defendants are providing him with assistance with laundry, cleaning his teeth, and cutting his fingernails. Such admissions render his claims based on assistance with these activities moot, and therefore defendants are entitled to summary judgment on these claims. As for dressing himself, plaintiff offers only conclusory and unsupported allegations regarding this claim, and certainly provided no evidence or specific details. Accordingly, defendants are entitled to summary judgment on this claim. Writing, cleaning his cell, and grooming/bathing, then, are the remaining claims. For purposes of this order only, the Court assumes, without deciding, that plaintiff has shown a triable issue of fact that he was denied access to a program or benefit as regards writing, cleaning his cell, and grooming/bathing.

### 4. Exclusion by Reason of Plaintiff's Disability

Defendants contend, and plaintiff disputes, that plaintiff's request was denied because he was able to bathe and groom without assistance and for security reasons, not because of his (alleged) disability. (MSJ at 13.)

The disability must have been "the motivating factor" for the exclusion. Therefore, a plaintiff must show a triable issue of fact exists that "a discriminatory reason *more likely motivated*" the defendant's decision. *Head v. Glacier Northwest Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005) (analyzing the causation standard for Titles I, II, and IV of the ADA).

Plaintiff has not made such a showing here. Defendants have presented evidence that they declined to grant plaintiff's request because it was not medically necessary, and for security reasons, as plaintiff is housed in the single-cell only Secured Housing Unit. Plaintiff gives only conclusory statements in support of his allegation that he was discriminated against because of his disability, and fails to counter defendants' security concerns. Undermining plaintiff's

7

assertions of discrimination is the undisputed fact that defendants have granted some of his requests, he is receiving some assistance, and he has been offered a place in the DPP. Such a record demonstrates an absence of a genuine issue of material fact. Furthermore, defendants' concessions show that defendants have made some reasonable accommodations within the meaning of Title II, 28 C.F.R. § 35.130(b)(7). On such the strength of defendants' evidence and the paucity of plaintiff's evidence, plaintiff has not shown that there is a triable issue of fact that his disability was the motivating factor for defendants' decision.

Because of this failure, and the failures shown above, defendants' motion for summary judgment will be granted. Even if plaintiff had established all the other elements of the offense (including that he has a qualifying disability and that he was denied access to programs and services), he has not shown a triable issue of fact as to the final element of an ADA violation.

Furthermore, even if plaintiff had shown a triable issue of fact above, success at trial on these issues would entitle him only to injunctive relief, not money damages. Money damages are not available for a violation of Title II of the ADA or the Rehabilitation Act absent a showing of discriminatory intent by the defendant. *See Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998). To show discriminatory intent, a plaintiff must establish deliberate indifference by the public entity. *Duvall*, 260 F.3d at 1138. Deliberate indifference requires: (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood. *Id.* at 1139. The first prong is satisfied when the plaintiff identifies a specific, reasonable and necessary accommodation that the entity has failed to provide, and the plaintiff notifies the public entity of the need for accommodation or the need is obvious or required by statute or regulation. *Id.* The second prong is satisfied by showing that the entity deliberately failed to fulfill its duty to act in response to a request for accommodation. *Id.* at 1139–40. The entity's duty is to undertake a fact-specific investigation to gather from the disabled individual and qualified experts sufficient information to determine what constitutes a reasonable accommodation, giving "primary consideration" the requests of the disabled individual. *Id.* The second prong is not satisfied if the failure to fulfill this duty to accommodate

is a result of mere negligence, such as "bureaucratic slippage" or where the entity simply "overlooked" a duty to act. *Id.*

The undisputed record defeats plaintiff's attempt to raise a triable issue of fact as to discriminatory intent. The parties agree that defendants did conduct at least two inquiries into plaintiff's allegations, including meeting with plaintiff, observing his daily activities and his cell, though plaintiff disputes the thoroughness of the inquiry and the inferences defendants drew from their investigations. (Compl. ¶¶ 61, 67–75; MSJ at 11–13.) Defendants have granted some of plaintiff's requests, and offered to place him in the DPP. On such undisputed facts, plaintiff has failed to show a triable issue of fact whether defendants acted with deliberate indifference.

In sum, defendants' motion for summary judgment on all plaintiff's ADA and Rehabilitation Act claims is GRANTED in favor of all defendants.

## II.  Eighth Amendment Claims

Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs by prescribing inadequate pain medication and physical therapy. Plaintiff alleges that he has suffered "daily and continual extreme pain" because of the lack of pain medications, and "the risk of further future serious nerve damage, muscular dystrophy/atrophy, and harm" because defendants have failed to prescribe sufficient physical therapy. The parties do not dispute the treatment plaintiff actually received; they dispute only the constitutional adequacy of that treatment.

Since 2006, plaintiff has had at least 47 medical appointments at PBSP related to the pain he experiences in his sides, arms, and neck. To treat this pain, defendants have prescribed plaintiff, without interruption since 2006, analgesic medications. These medications include Amitriptyline HCL (Elavil), Acetaminophen, Naproxen, Ibuprofen, Tylenol, and Indocin. (MSJ at 18.) According to defendants, plaintiff's nerve pain has responded well to tricyclic antidepressant (TCA) therapy, which includes Elavil. (*Id.*) Defendants assert that TCA therapy

9

can effectively treat many types of chronic pain, including that which plaintiff experiences. (*Id.*)

Plaintiff also requested anti-inflammatory steroid shots to relieve his pain. According to defendants, plaintiff's pain "is secondary to nerve injury, rather than inflammatory nerve disease, which is the type of pain that anti-inflammatory shots are designed to alleviate." (*Id.*) Upon examination, Dr. Sayre, a physician at PBSP, concluded that stretching and relaxation would be a better treatment than steroid shots. Plaintiff was familiar with these stretches and exercises, having learned them during previous physical therapy visits. Sayre further explained that his primary neuropathic pain was well-treated with TCA therapy. Plaintiff, however, stated that he did not like Elavil's sedative side-effects. (*Id.* ¶ 35.) Sayre explained that plaintiff's pathological nerve condition could not be treated without some secondary sedation. (*Id.*) After some discussion, plaintiff agreed to a trial of a reduced dosage of Elavil which he would receive during the day.

Defendants also have prescribed non-steroidal anti-inflammatory drugs (NSAIDs), including Naproxen and Sulindac, in response to his request for pain treatment. (MSJ at 18–19.) Defendants assert that when plaintiff complained that the medications were not working, medical staff sent him to a specialty clinic for "trigger point injections." (*Id.*) For example, he received trigger point injections on June 17, 2011. (*Id.*) Plaintiff stated that these injections worked well, and decreased the pain. (*Id.*)

The Eighth Amendment requires that prison officials provide all prisoners with medical care. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *see Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, i.e., the offending conduct was wanton, *id.* (citing *Wilson*, 501 U.S. at 297).

In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective first component of an Eighth Amendment claim, a court must consider the circumstances, nature, and duration of the deprivation. The more basic the need, the shorter the

10

time it may be withheld. *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

Plaintiffs seeking relief must show that the defendant were deliberately indifferent to their serious medical needs. *See*, e.g., *Farmer*, 511 U.S. at 834 (inmate safety); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (inmate health). Neither negligence nor gross negligence will constitute deliberate indifference. *See Farmer*, 511 U.S. at 835–36 & n.4. A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety. *Id.* at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *See id.*

Plaintiff has failed to establish either *Farmer* element with respect any defendant. First, the record indicates that the alleged deprivation of the basic necessity of medical care was not objectively sufficiently serious — there was a difference in opinion about what the treatment should be, not a substantial deprivation of treatment itself. It is undisputed that the medical professionals at PBSP have given plaintiff many medications since 2006 specifically to treat his pain. While plaintiff may have experienced pain in spite of these medications, the undisputed frequency and variety of prescriptions render implausible any allegation that there was a substantial deprivation of treatment. Second, plaintiff has not established that the medical personnel acted with deliberate indifference. The undisputed record is that defendants examined plaintiff, were aware of his medical history, provided him with medications in consultation with him, and tried new medications in further attempts to treat his pain. The undisputed record also shows that plaintiff did receive some physical therapy, though not, in plaintiff's opinion, timely or sufficient, a delay from May to September 2008, and then only two sessions. (Compl. ¶¶ 89, 98–99.)[5] The fact that plaintiff continues to experience pain despite the doctors' efforts does not

---

[5] According to plaintiff, the physical therapist opined that "defendants should have schedule multiple therapy sessions long ago because plaintiff has now lost a[]lot of permanent muscle tissue[] that could have been maintained through therapy." (Compl. ¶ 98.) This opinion from an unknown person is insufficient to show deliberate indifference. This assertion lacks

11

show that defendants were deliberately indifferent. Rather, defendants were aware of the risks to plaintiff's health and took reasonable steps to attend to that risk.

The only apparent factual dispute is a difference of opinion between plaintiff and defendants. "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference, *see Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that he or she chose this course in conscious disregard of an excessive risk to plaintiff's health. *Id.* at 1058. Here, plaintiff cites as examples that defendants denied him the "stronger medications, like a cortisone shot for the extreme pain in his []neck and shoulder," and denied him year-round physical therapy after an examination determined that he would not benefit from it.[6] (Compl. ¶ 90.) Plaintiff does admit that the physicians would submit his request for year-round therapy to the relevant committee, though plaintiff is doubtful he will receive the treatment. (*Id.*) However, plaintiff does not show that the course of treatment taken by physicians, however inadequate plaintiff finds it, was medically unacceptable, or that defendants chose the course of treatment in conscious disregard of an excessive risk to plaintiff's health. Plaintiff, then, has not shown a triable issue of fact whether defendants violated his Eighth Amendment rights. Accordingly, defendants' motion for summary judgment is GRANTED as to these claims.

---

adequate details: which defendants should have scheduled therapy, what type of therapy and how many sessions, what muscle tissue has been lost (and how exactly that has harmed plaintiff), how much tissue could have been saved, whether this unnamed person was qualified to render such an opinion, etc.

[6] Defendants assert that plaintiff would benefit greatly from performing in-cell stretching exercises, but would not benefit from year-round therapy. (MSJ at 8 & 13.)

### III. Negligence Claims

Because defendants are entitled to summary judgment on all federal claims, the Court declines to exercise jurisdiction over plaintiff's state law negligence claims, which are hereby DISMISSED without prejudice.

## CONCLUSION

Plaintiff having failed to show that there are triable issues of material fact, defendants' motion for summary judgment (Docket No. 17) is GRANTED as to all federal claims against all defendants, who are entitled to judgment as a matter of law on such claims. Plaintiff's negligence claims are DISMISSED without prejudice. The Clerk shall terminate Docket No. 17, enter judgment in favor of defendants, and close the file.

**IT IS SO ORDERED.**

DATED: September 18, 2012

SUSAN ILLSTON
United States District Judge